Willie JACKSON, Appellant,

v.

**JB HUNT TRANSPORT, INC., Appellee.**

No. 2010–CA–001487–MR.

Court of Appeals of Kentucky.

Jan. 13, 2012.

Rehearing Denied March 22, 2012.

Discretionary Review Denied by Supreme Court Dec. 12, 2012.

178

Thomas J. Schultz, Louisville, KY, for appellant.

Kim M. Jackson, Atlanta, GA, for appellee.

Before ACREE, MOORE and NICKELL, Judges.

## OPINION

ACREE, Judge:

Willie Jackson appeals the Jefferson Circuit Court's grant of summary judgment in favor of J.B. Hunt Transport, Inc., arguing that J.B. Hunt was not entitled to judgment as a matter of law as to any of his claims. We affirm.

### Facts and Procedure

In September 2006, Willie Jackson began his employment as an over-the-road truck driver for J.B. Hunt. On the date he was employed, Jackson signed a "Certificate of Understanding and Agreement" that reads:

> I certify that I have received a copy of the J.B. Hunt Transport Driver's Manual published June 1, 2005. I have read and understand the provisions outlined in this manual and agree to follow them.

I also understand that the provisions in this manual by no means constitute all the rules, policies and benefits, both written and unwritten, as business requires. *Neither these rules, policies and benefits, nor any other written or oral statements are contracts of employment and both the employee and the Company understand that employment may be terminated by either at any time for any reason.* [Emphasis added].

Jackson was also presented with other employee materials, including J.B. Hunt's Substance Use/Abuse Policy.

J.B. Hunt's Substance Use/Abuse Policy included its Voluntary Assistance Program (VAP), which was created in accordance with the guidelines contained in 49 C.F.R.[1] § 382.121. As the Federal Motor Carrier Safety Administration (FMCSA) explained when it promulgated the final rule authorizing such programs, "[t]he intent of this section is to allow employers to establish programs that permit employees to self-identify drug use or alcohol abuse without DOT [2] consequences." Controlled Substances and Alcohol Use and Testing, 66 Fed.Reg. 43,097–01, 43,100, 2001 WL 929537 (August 17, 2001). Without such a program, the employer's discovery of an employee's substance abuse would jeopardize that employee's ability to drive a commercial vehicle. *See, e.g.,* 49 C.F.R. § 382.213(b) ("No employer having actual knowledge that a driver has used a controlled substance shall permit the driver to perform or continue to perform a safety-sensitive function.").

But the real purpose behind the rule is not to assure the employee's employment as a commercial driver. Rather, the purpose is "to identify these drivers who are safety risks to themselves and to the public." 66 Fed.Reg. at 43,098. A voluntary self-reporting program like J.B. Hunt's, no less than the legislatively mandated drug-testing program applicable to every employee with a commercial driver's license, accomplishes that purpose. *See* 49 U.S.C.[3] § 31133; 49 U.S.C. § 31306(e), (f) (49 C.F.R. § 382.121 was promulgated under authority of these statutes.).

An employer's "decision whether to establish such a program is voluntary, and is not mandated by this rule. However, if an employer chooses to implement a self-admission program, the employer must ensure the program complies with the requirements of this part." 66 Fed.Reg. at 43,100. There is no question that J.B. Hunt's program complied with the regulation.

Portions of J.B. Hunt's Substance Use/Abuse Policy, with highlighting to note particularly relevant language, is as follows:

This policy does not alter or change any other policies, procedures, or provisions previously adopted or incorporated by J.B. Hunt, including "Actions Which Result in Automatic Termination or Automatic Cancellation of Contract" policy in the *J.B. Hunt Driver Manual* . . . .

This policy *does not create an employment contract* between the employee or independent contractor and J.B. Hunt. This policy *will not be construed as creating any contractual rights or entitlements.* J.B. Hunt reserves the right to revise the content of this policy, in whole or in part, as business necessities arise. . . .

---

**1.** Code of Federal Regulations.

**2.** United States Department of Transportation.

**3.** United States Code.

IX. *Driver Qualification and Results of Drug Testing*

A. *Any person who tests positive for controlled substances ... or who violates any of the other provisions of this policy will be automatically terminated ....*

X. *Voluntary Assistance Program*

....

B. This Section is intended to meet the requirements of 49 CFR Part 382.121 for self reporting drivers. The main provisions of this regulation are:

1. Employees who admit to alcohol misuse or controlled substances use are not subject to the referral, evaluation and treatment requirements of part 382 and part 40[DOT's requirements when random testing reveals a driver's substance abuse] so long as:

a. The admission is in accordance with the voluntary self-identification program contained in this section;

b. The driver does not self-identify in order to avoid testing under the requirements of the federal regulations or company policy;

c. The driver makes the admission of alcohol misuse or controlled substances use prior to performing a safety sensitive function (i.e., prior to reporting for duty); and

d. The driver does not perform a safety sensitive function until J.B. Hunt is satisfied that the employee has been evaluated and has successfully completed education or treatment requirements in accordance with the self-identification program guidelines.

2. Under this program, *J.B. Hunt will not take adverse action against* an employee making a *voluntary admission* of alcohol misuse or controlled substance use within the parameters of the program or policy and paragraph 1 of this section;

3. J.B. Hunt will allow the driver sufficient opportunity to seek evaluation, education or treatment to establish control over the employee's drug or alcohol problem within the current leave policies;

4. J.B. Hunt will permit the driver to return to safety sensitive duties only upon successful completion of an educational or treatment program, as determined by a drug and alcohol abuse evaluation expert....

C. *Any driver who participates in this program who tests positive* or refuses any tests, DOT or otherwise, for the duration of their employment/contract, or future employments/contracts, *would be barred from driving for J.B. Hunt again at any time.* Furthermore, this program is a one-time offering. A driver who relapses will not be eligible for continued employment or contract. [Emphasis added].

On January 26, 2007, Jackson self-reported to J.B. Hunt that he had been using cocaine. In accordance with the VAP, J.B. Hunt allowed Jackson a personal leave of absence and sufficient opportunity to find treatment and help from a qualified facility.[4] J.B. Hunt referred Jackson to American Substance Abuse Professionals (ASAP), an organization familiar with self-reporting programs for commercial drivers, for placement in a qualified treatment program. On January 29, 2007, Jackson signed a document with ASAP as part of the J.B. Hunt program; the document,

---

4. The Department of Transportation requires certain qualifications of each Substance Abuse Professional (SAP) and its treatment program before allowing their participation in the DOT drug and alcohol testing program. 49 C.F.R. § 40.281.

entitled "Alcohol and/or Drug Rehabilitation Agreement," stated, in pertinent part,

I understand that *the following may result in termination* by my employer[:]

1. Failure to successfully complete [substance abuse] education and/or treatment recommendations[;]

2. *A positive alcohol and/or drug test,* or [;]

3. Failure to comply with my [substance abuse] aftercare, education and/or treatment recommendations. [Emphasis added].

After he signed the document, ASAP referred Jackson for treatment to Wellstone Regional Hospital (Wellstone) in Jeffersonville, Indiana.

On January 31, 2007, Jackson began his participation in Wellstone's drug treatment program at which time he reported using cocaine on January 30, 2007. Among Wellstone's requirements was the expectation that Jackson would refrain from using drugs while participating in the program. On February 1, 2007, Jackson tested positive for cocaine. However, as Jackson admits in his brief, because cocaine use is detectible for up to, but not longer than, seventy-two hours after last use, the positive drug test was not unanticipated, and did not establish that he used cocaine after beginning his participation in the Wellstone program.

However, there is no genuine issue of material fact that Jackson used cocaine subsequent to the date he began treatment at Wellstone. In sworn testimony, Wellstone's Director of Addiction Services, John Ambers, read from and confirmed his own notes from Jackson's patient records. Those notes reflect that during a group session on February 6, 2007, Jackson

was instructed that he would have to give a urine sample this session. Patient became very resistant claiming that the cocaine in his system would still be there. Therapist explained that cocaine is out of the body within seventy-two hours. Then client argued that cocaine does not come out of the body for five days. Therapist then stated that it had been six days since patient reported last use. Patient stated that he had reported that he had used early Friday morning [February 2, 2007]. Therapist showed progress note dated February 1st, stating that patient reported using cocaine the night before the day of admission [January 30, 2007]. Group peers confirmed this information but patient denied this.

Patient then refused to give a sample and was informed that if he did not give sample he would be discharged from the program. Patient eventually admitted that he had used cocaine Saturday night 2–03–07.

Mr. Ambers then confirmed Jackson tested positive for cocaine on February 6, 2007. Ambers was asked during deposition, "[I]s there any doubt in your mind that he [Jackson] had used [cocaine] while participating in the program?" and his answer was "No."

However, Ambers also confirmed that on February 26, 2007, Jackson completed the program, subject to aftercare participation. Nevertheless, on February 28, 2007, J.B. Hunt terminated Jackson's employment effective February 15, 2007. J.B. Hunt cited Paragraph C of the VAP as the basis for termination since Jackson self-reported, began participation in a substance abuse program, and then tested positive for illegal drug use.

Jackson brought suit against J.B. Hunt, alleging his termination violated J.B. Hunt's Substance Use/Abuse Policy and VAP as set forth in 49 C.F.R. § 382.121, and that this violation constituted a breach of contract and a wrongful discharge under

statutory and common law. He also claimed that J.B. Hunt was prevented by the doctrine of promissory estoppel from terminating his employment once he self-reported.

In separate orders dated March 10 and July 13, 2010, the circuit court granted summary judgment in favor of J.B. Hunt as to all of Jackson's claims.

### Standard of Review

■ "The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Coomer v. CSX Transp., Inc.*, 319 S.W.3d 366, 370 (Ky.2010) (quoting *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky.App.1996)). "An appellate court need not defer to the trial court's decision on summary judgment and will review the issue de novo because only legal questions and no factual findings are involved." *Coomer*, 319 S.W.3d at 370–71 (quoting *Hallahan v. The Courier—Journal*, 138 S.W.3d 699, 705 (Ky.App.2004)).

### Analysis

■ First, we agree with the circuit court's ruling that 49 C.F.R. § 382.121 does not create a private right of action. No private right of action is created under either federal or state law.

It appears that very few federal courts have addressed the issue. Those that have addressed it found that "DOT regulations requiring drug and alcohol testing for safety-sensitive positions in transportation industries do not provide for a 'private cause of action . . . to aggrieved employees for a violation of the procedural protections'." *Wyatt v. J.B. Hunt Transport, Inc.*, 366 Fed.Appx. 718, 719 (8th Cir.2010)[5] (quoting *Williams v. United Parcel Serv., Inc.*, 527 F.3d 1135, 1137 (10th Cir.2008), and affirming *Wyatt v. J.B. Hunt Transport, Inc.*, 2009 WL 652723, *5 (No. 4:08CV01501 JMM) (E.D.Ark. March 12, 2009)). We see no reason to disagree with the analysis embarked upon, or conclusion reached, by these federal courts interpreting the federal regulation.[6]

Applying Kentucky law, we are obliged to start with the authority for private rights of action based on statute, Kentucky Revised Statutes (KRS) 446.070, which states that "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." However, this statute affords Jackson no relief. Our appellate courts have consistently interpreted the words "any statute" in KRS 446.070 to include Kentucky statutes, but to exclude federal statutes and regulations. *T & M Jewelry, Inc. v. Hicks ex rel. Hicks*, 189 S.W.3d 526, 530 (Ky.

5. In accordance with Federal Rules of Appellate Procedure (FRAP) 32.1: "A court may not prohibit or restrict the citation of federal judicial opinions, orders, judgments, or other written dispositions that have been: (i) designated as 'unpublished' . . . and (ii) issued . . . after January 1, 1997." While Kentucky courts are not bound by FRAP 32.1 or federal cases interpreting Kentucky law, the federal judiciary has determined that all of its opinions rendered after January 1, 1997, have equally persuasive import without regard to their designation as unpublished. Therefore,

we should take no less a view of post—1996 unpublished federal opinions than we do of published federal opinions.

6. Additionally and generally, "[t]he Supreme Court [of the United States] has demonstrated reluctance in finding implied rights of action." *Local 3–689, Oil, Chemical & Atomic Intern. Union v. Martin Marietta Energy Systems, Inc.*, 77 F.3d 131, 134 fn. 5 (6th Cir. 1996) (citations omitted).

2006); *Alderman v. Bradley*, 957 S.W.2d 264, 266–67 (Ky.App.1997).

Jackson cannot base any of his claims on J.B. Hunt's violation of 49 C.F.R. 382.121, even as incorporated into the employer's policy. To the extent Jackson's claims of wrongful discharge, breach of contract, and promissory estoppel are based on this regulation, they must fail. However, we will consider these claims independently.

Jackson's wrongful discharge claim is based on his contention that he was terminated for exercising his right, presumably contractual, under the VAP. We disagree.

First, the record reveals that Jackson was not discharged for complying with the VAP; rather, he was discharged for his failure to comply with that program, including the expectations of the treatment facility. The record shows that, contrary to J.B. Hunt's policy and against the requirements of the Wellstone program, Jackson used cocaine while undergoing treatment and tested positive for cocaine use.

Second, it is significant that federal law was clearly designed to avoid governmental interference with the employment relationship. As the FMCSA clearly tells employers such as J.B. Hunt in 49 C.F.R. § 40.305, captioned "How does the return-to-duty process conclude?": [7]

> (a) As the employer, *if you decide that you want to permit the employee to return to the performance of safety-sensitive functions,* you must ensure that the employee takes a return-to-duty test. This test cannot occur until after the SAP has determined that the employee has successfully complied with prescribed education and/or treatment. The employee must have a negative drug test result and/or an alcohol test with an alcohol concentration of less than 0.02 before resuming performance of safety-sensitive duties.
>
> (b) As an employer, you must not return an employee to safety-sensitive duties until the employee meets the conditions of paragraph (a) of this section. However, *you are not required to return an employee to safety-sensitive duties because the employee has met these conditions. That is a personnel decision that you have the discretion to make, subject to collective bargaining agreements or other legal requirements.*

49 C.F.R. § 40.305(a)–(b) (emphasis added); *see also* 66 Fed.Reg. at 43,101 ("The FMCSA has remained silent on disciplinary actions, hiring/firing decisions, or financial matters.").

■■■ "Generally, in the absence of a specific contractual provision to the contrary, employment in Kentucky is terminable at-will, meaning that an employer may ordinarily discharge an employee for good cause, for no cause, or for a cause that some might view as morally indefensible." *Miracle v. Bell County Emergency Med. Services,* 237 S.W.3d 555, 558 (Ky.App. 2007) (quotations marks omitted). There is a public policy exception to the at-will doctrine, applying when an employee is discharged for refusing to violate a constitutional or statutory provision. *Firestone Textile Co. Div., Firestone Tire and Rubber Co. v. Meadows,* 666 S.W.2d 730, 731

---

**7.** "The Department [of Transportation] restructured part 40 in the question and answer format. Comments received were very complimentary about the reorganization of that rule, generally praising the rule as much clearer and easier to follow. As a result, the Department received the plain English award 'No Gobbledygook' for its efforts." 66 Fed. Reg. at 43,097.

"Vice President Al Gore created the award to recognize federal employees who use plain language in innovative ways[.]" http://www.plainlanguage.gov/examples/award_winning/nogobbledygook.cfm.

(Ky.1983). There is nothing in the record to indicate that J.B. Hunt ever asked Jackson to violate any such provision; necessarily, the exception does not apply.

■ Jackson's breach of contract claim also lacks merit because both of the documents he claims constitute an employment contract expressly disclaim such a relationship. The trial court was correct in ruling that the specific disclaimer defeats his argument that a contract existed. *Nork v. Fetter Printing Company*, 738 S.W.2d 824, 827 (Ky.App.1987). In Kentucky, we only recognize an employee's guarantee of continued employment if there is an express provision clearly stating the intent of the employer to create such a relationship. *Miracle*, 237 S.W.3d at 558. Nothing in this record indicates anything other than that J.B. Hunt did all it could to maintain Jackson's employment on an at-will basis. *See Noel v. Elk Brand Mfg. Co.*, 53 S.W.3d 95, 99 (Ky.App.2000) ("Elk Brand expressed its intent not to enter a 'discharge only for cause' employment contract with Noel by including the phrase '[this] booklet is not a contract' in its employee manual."); *cf. Shah v. Am. Synthetic Rubber Corp.*, 655 S.W.2d 489, 492 (Ky.1983) ("[P]arties may enter into a contract of employment terminable only pursuant to its express terms—as 'for cause'—by clearly stating their intention to do so.... "). Jackson should have expected that his employment was at-will and terminable at any time for any reason.

Jackson also claims that J.B. Hunt should be estopped from terminating Jackson because he detrimentally relied on promises from J.B. Hunt that if Jackson self-reported his cocaine use and successfully completed a treatment program he would be allowed to return to work for J.B. Hunt. Again, we disagree.

■ Kentucky recognizes the doctrine of promissory estoppel as a cause of action.

*McCarthy v. Louisville Cartage Co., Inc.*, 796 S.W.2d 10, 11–12 (Ky.App.1990). It requires "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance [and it] is binding if injustice can be avoided only by enforcement of the promise." *Sawyer v. Mills*, 295 S.W.3d 79, 89 (Ky.2009).

■ To survive J.B. Hunt's summary judgment motion as to his claim of promissory estoppel, Jackson needed to demonstrate a genuine issue regarding at least two material facts: (1) that J.B. Hunt made a promise that if Jackson self-reported, he would not be terminated as long as he satisfied one condition, *i.e.*, completion of the substance abuse program; and (2) that he "materially change[d] his position in reliance on the statement." *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 642 (Ky.App.2003). Because no evidence supports either contention, we agree with the circuit court.

■ Even if we considered the VAP the kind of statement that could give rise to a promissory estoppel claim (which we do here only for the sake of analysis), Jackson misconstrues that "promise," if it be such. He asserts that the promise of continued employment was conditioned only on his completion of the program. However, there is no genuine issue that J.B. Hunt's Substance Use/Abuse Policy with its VAP, and Wellstone's rules as well, required Jackson to refrain from drug use resulting in a positive drug test from the time he began his participation in the program. Jackson ignores that condition.

Under the VAP, "[a]ny driver *who participates* in this program *who tests positive* [emphasis added] ... would be barred from driving for J.B. Hunt again at any

time." Also, under the Substance Use/Abuse Policy, section IX.A., Jackson could be terminated for *any* positive drug test. That policy is not prohibited by the legislative scheme which only requires that the self-reporting itself not be the basis of adverse action. *See* 49 C.F.R. § 382.121(b)(1) (requiring that voluntary self-reporting programs "prohibit the employer from taking adverse action against an employee making a voluntary admission"), *and* 49 C.F.R. § 40.305(a)–(b) (leaving personnel decisions to employer). Jackson's self-reporting was not the basis of his termination in this case.

Furthermore, 49 C.F.R. § 40.305(a) is clear that whether "to permit the employee to return to the performance of safety-sensitive functions," even an employee like Jackson who has successfully completed a treatment program, remains the prerogative of the employer.

The record is clear that Jackson did use cocaine after starting the program; he considers that fact irrelevant to the issue of his reliance, however. He argues that "[a]fter Jackson self-reported, his reliance was complete." Assuming, again, that the VAP was the sort of statement upon which a claim of promissory estoppel can be based, Jackson was still required to present some evidence that he "materially change[d] his position in reliance on the statement." *Rivermont Inn,* 113 S.W.3d at 642. We find no material change of position supported by the record.

Before self-reporting, Jackson was J.B. Hunt's at-will employee who kept his drug use a secret from both his employer and the United States Department of Commerce, which issued his commercial driver's license. After self-reporting, Jackson remained J.B. Hunt's at-will employee who admitted using cocaine. In other words, Jackson did not give up employment security by self-reporting—as an at-will employee, he had no employment security to begin with. His position relative to J.B. Hunt did not change.

Considering the many written statements warning of Jackson's termination upon a positive drug test, and Jackson's acknowledgment of those statements, we agree with the circuit court and can find no detrimental reliance to support Jackson's claim of promissory estoppel.

### *Conclusion*

We find no genuine issue of material fact that would have prevented the circuit court from entering summary judgment in favor of J.B. Hunt on any claim asserted by Jackson before that court. Therefore, we affirm.

ALL CONCUR.