ALICE M. BATCHELDER, Circuit Judge.
In this wrongful termination suit, Plaintiff-Appellant Bruce Holly alleged he was illegally fired because of his lawful possession of a concealed firearm on his employer’s—Defendant-Appellee UPS Supply Chain Solutions’ (“UPS SCS”)—property. Finding no genuine dispute as to any material fact, the district court granted UPS SCS and Defendant-Appellee Jeremy Fletcher, UPS SCS’s Human Resources Sueprvisor, summary judgment. Holly appealed, and we affirm.
I. Background
The material facts in this case are not in dispute. UPS SCS hired Holly in October 2010 to work as a part-time supervisor in the Healthcare Division at its Outer Loop facility in Kentucky. After about six months with the company, Holly transitioned to a full-time Operations Supervisor role, which is the position he held at the time his employment ended in May 2013. On April 1, 2013, Holly experienced car trouble on his way to work at UPS SCS. After he arrived, he asked his manager, Ron Nolan, for permission to leave work to take his vehicle to a repair shop. Nolan agreed and sent a fellow member of management with Holly to drive him back to work from the shop.
Holly testified that as he was leaving work, he remembered that he had stored a handgun in the center console of his car. Holly had obtained his concealed carry ■license in 2012, and, from at least that time forward, he carried a handgun in his vehicle every day. Because Holly did not want to leave his handgun in the car while it was at the shop, he asked a subordinate employee, Kenneth Moore (who was working at the time), if he could store the gun in Moore’s vehicle while his was being repaired. Moore agreed, and, in the UPS SCS parking lot, Holly removed the gun from his car and placed it in Moore’s.
While Holly was at the repair shop, Moore began to worry about his temporary possession of Holly’s gun. Moore felt so uncomfortable that he reported Holly’s request to a supervisor, who referred the matter to Nolan. Nolan discussed the incident with Holly upon his return from the shop, reminding him of UPS SCS’s policy, which reads, ‘We also prohibit the possession and/or use of weapons by any employee on UPS property.” Holly was not disciplined, however, and at the end of the day he retrieved his gun from Moore’s vehicle.
UPS SCS security and management later became aware of the incident through an unrelated investigation. UPS SCS initially suspended Holly on May 10, 2013, and, upon the conclusion of an internal *460 investigation, terminated his employment on May 20, 2013.' At that time, UPS SCS cited two reasons for Holly’s termination: Holly’s poor performance review in 2011 and the fact that Holly had asked a subordinate (Moore) for a personal favor on company time.[1] Holly filed suit in Jefferson Circuit Court of the Commonwealth of Kentucky in September 2013, alleging that UPS SCS and its Human Resources Supervisor, Fletcher, violated Kentucky Revised Statutes §§ 527.020 and 237.106 by firing him and that his termination constituted wrongful discharge in violation of the public policy evidenced by those statutes.[2] Fletcher and UPS SCS removed the case to the United States District Court for the Western District of Kentucky on the basis of diversity jurisdiction, 28 U.S.C. §§ 1332 and 1441. Upon completion of discovery, both defendants sought summary judgment. Because it found that Holly could not establish the essential elements of a wrongful termination claim under Kentucky law, the district court granted defendants-appellees’ motion.
II. Analysis
A. Standard of Review
We review de novo a district court’s granting of summary judgment. Tysinger v. Police Dep’t of City of Zanesville, 463 F.3d 569, 572 (6th Cir. 2006). Summary judgment is appropriate if there is no genuine dispute as to any material fact, that is, when “the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.” Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); see also Fed. R. Civ. P. 56(a), (c). Where, as here, we have diversity jurisdiction under 28 U.S.C. § 1332, the substantive law governing the action is that of the forum state, see Erie R.R. v. Tompkins, 304 U.S. 64, 79, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), but it is the federal standard that governs the motion for summary judgment, see McBride v. Acuity, 510 Fed.Appx. 451, 452 (6th Cir. 2013) (additional citations omitted).
B. Wrongful Termination under Kentucky Law
We begin our analysis with the well-established principle under Kentucky law; that “[o]rdinarily an employer may discharge his at-will employee for good cause, for no cause, or for a cause that some might view as morally indefensible.” Grzyb v. Evans, 700 S.W.2d 730, 731 (Ky. 1985) (quoting Firestone Textile Co. Div. v. Meadows, 666 S.W.2d 730, 731 (Ky. 1983)). Kentucky’s de facto at-will employment rule may be abrogated by contract or statute. Id. at 400-02; see also Jackson v. JB Hunt Transport, Inc., 384 S.W.3d 177, 183 (Ky. Ct. App. 2012) (“Generally, in the absence of a specific contractual provision to the contrary, employment in Kentucky is terminable at-will....”) (citations omitted) (internal quotation marks omitted). Kentucky common law also recognizes a narrow cause of action for wrongful termination when the discharge was “contrary to a fundamental and well-defined public policy as evidenced ... by a constitutional *461 or statutory provision.” Grzyb v. Evans, 700 S.W.2d 399, 401 (Ky. 1985). “The decision of whether the public policy asserted meets these criteria is a question of law for the court to decide, not a question of fact.” Id. A discharge falling within the public policy exception to Kentucky’s terminable-at-will rule is actionable only:
(1) Where there are explicit legislative statements prohibiting the discharge, (2) where the alleged reason for the discharge ... was the employee’s failure or refusal to violate a law in the course of employment, or (3) when the reason for the discharge was the employee’s exercise of a right conferred by well-established legislative enactment.
Mitchell v. Univ. of Ky., 366 S.W.3d 895, 898 (Ky. 2012) (citations omitted) (internal quotation marks omitted).
C. Application of Kentucky Law to Holly’s Wrongful Termination Claim
Because Kentucky is an at-will employment jurisdiction, Holly must first demonstrate that he falls within at least one of the three exceptions that Kentucky law recognizes to the default at-will employment relationship. The record does not support—nor do the parties contend—that there was a contractual exception to Kentucky’s at-will employment rule. Holly therefore rests his claim for wrongful termination on two statutory provisions and the general public policy exception.
Holly first argues that Kentucky Revised Statutes § 627.020 provides him with “the legal right and evidence^] the public policy affording Holly the right to keep a handgun in his vehicle while on his employer’s, UPS’s property.” This statute, while found in the Kéntucky penal code, creates a civil cause of aetion. Mitchell, 366 S.W.3d at 902. The statute provides in relevant part:
No person, public or private, shall prohibit a person licensed to carry a concealed deadly weapon from possessing a firearm, ammunition, or both, or other deadly weapon in his or her vehicle in compliance with the provisions of KRS 237.110 and 237.115. Any attempt by a person or organization, public or private, to violate the provisions of this subsection may be the subject of an action for appropriate relief or for damages in a Circuit Court or District Court of competent jurisdiction.
Ky. Rev. St. § 527.020(4) (emphasis added); see also Ky. Rev. Stat. § 527.020(8) (including similar language and creating a civil cause of action). Thus, the act protected by subsection (4) is possessing a weapon or ammunition in one’s vehicle “in compliance with the provisions of KRS 237.110 and 237.115.”[3] Under § 237.110, a private employer “may not prohibit employees or other persons holding a concealed deadly weapons license from carrying concealed deadly weapons, or ammunition, or both in vehicles owned by the employee.” Ky. Rev. Stat. § 237.110(17) (emphasis added).
The plain words of the statute make clear that Holly’s actions do not fall within the protection of the statute. While it is undisputed that Holly possessed a gun in his vehicle on the UPS SCS premises— which is gun possession protected under Kentucky law—it is likewise undisputed that he removed the gun from his vehicle and placed it in another employee’s vehicle—which is not gun possession “in compliance with the provisions of KRS 237.110,” Ky. Rev. Stat. § 527.020(4); see *462 § 237.110(17), and is not protected under the statute. Significantly, as the district court correctly pointed out, § 237.110(17) expressly contemplates disciplinary action for an employee’s carrying a concealed weapon on the employer’s premises. Ky. Rev. St. § 237.110(17) (“Carrying of a concealed weapon, or ammunition, or both in a location specified in this subsection by a license holder shall not be a criminal act but may subject the person to denial from the premises or removal from the premises, and, if an employee of an employer, disciplinary measures by the employer.”).
Subsection (8) of § 527.020 provides no additional support for Holly’s argument. That section unambiguously defines when a firearm or other deadly weapon is deemed concealed, which is when “it is located in any enclosed container, compartment, or storage space installed as original equipment in a motor vehicle by its manufacturer....” Ky. Rev. St. § 527.020(8). “No person or organization, public or private, shall prohibit a person from keeping a loaded or unloaded firearm or ammunition, or both, or other deadly weapon in a vehicle in accordance with the provisions of this subsection.” Id. (emphasis added). Because Holly removed his handgun from his vehicle, his actions on April 1, 2013, are not protected under § 527.020.
Holly alternatively argues that his moving the handgun from his vehicle to Moore’s vehicle is protected under Kentucky Revised Statutes § 237.106(3), which lists four situations in which a firearm may be “removed from the vehicle or handled”: “[1] self-defense, [2] defense of another, [3] defense of property, or [4] as authorized by the owner, lessee, or occupant of the property.” Section 237.106(3) imposes civil liability on “[a]n employer that fires, disciplines, demotes, or otherwise punishes an employee who is lawfully exercising a right guaranteed by this section who is engaging in conduct in compliance with this statute .... ” Holly argues that “defense of property” “should not be limited to handling a firearm to aggressively fight off others who may be trying to damage or steal property,” the traditional understanding of the term. See, e.g., 6 Am. Jur. 2d Assault and Battery § 128 (2016). Rather, Holly would have us read into Kentucky law a public policy exception for “promoting responsible gun possession/control.” However, “[fjederal courts should be ‘extremely cautious about adopting “substantive innovation” in state law,’ ” Berrington v. Wal-Mart Stores, Inc., 696 F.3d 604, 608 (6th Cir. 2012) (quoting Combs v. Int’l Ins. Co., 354 F.3d 568, 578 (6th Cir. 2004) (citation omitted)), and, however inclined we might be to believe that such an exception would be a good thing, we decline to construe the term “defense of property” as broadly as Holly petitions.
Thus, because Holly’s actions on April 1, 2013, are protected by neither § 237.106 nor § 572.020, we hold that he cannot sustain a claim for wrongful termination under Kentucky law.[4] We also hold *463 that because Holly is not protected by any Kentucky statute, his discharge did not fall within the public policy exception to Kentucky’s terminable-at-will rule, as there was no explicit legislative statement prohibiting his discharge, nor was Holly exercising a right conferred by well-established legislative enactment. See Mitchell, 366 S.W.3d at 898. We find support for our decision in prior cases addressing similar questions. For example, one district court has held that it is of no moment that the gun was initially or almost always stored in the vehicle of the holder of a license for concealed deadly weapon. Korb v. Voith Indus. Servs., Inc., No. 3:12-CV-00222-H, 2012 WL 7062365, at *3 (W.D. Ky. Nov. 28, 2012) (“In sum, while Kentucky law certainly protects Korb’s right to possess the handgun in his vehicle at work, this protection does not extend to the handling of the firearm. Although the punishment for Korb’s indiscretion was perhaps severe, Voith has the discretion to terminate an employee who violates company policies in such a way that does not run contrary to state or federal statutory or constitutional law.”). In Korb, the district court noted that “had Korb merely stored the gun in his vehicle [rather than revealing it to a security officer], the [Kentucky] statute would have protected his actions.” Id. at *6; see also Mullins v. Marathon Petroleum Co., No. 12-108-HRW, 2014 WL 467240, at *4 (E.D. Ky. Feb. 5, 2014) (“As the firearm was not concealed in any enclosed container or compartment in Mr. Mullins [sic] vehicle, Plaintiffs’ claim under KRS § 527.020(8) fails as a matter of law.”).
Despite his creative attempts to stretch Kentucky law to cover his actions on April 1, 2013, Holly cannot demonstrate that any federal or state statute or constitutional provision applies in this case. However commendable his intentions in transferring his handgun to another employee’s car may have been, the fact remains that Holly—while on UPS SCS’s property—removed his gun from his vehicle. Regardless of how long he handled the gun in transporting it to Moore’s vehicle (or back to his), Holly lost statutory protection from being discharged for possessing a gun inside his vehicle when he removed the gun from his vehicle. Hence, Holly’s extensive discussion regarding whether a jury could have found UPS SCS’s proffered reasons for discharging him to be “pretexts” is immaterial.[5] Because the default employment relationship in Kentucky is at will, UPS SCS and its agents (in this case, Fletcher) could fire Holly “for good cause, for no cause, or for a cause that some might view as morally indefensible.” McDonald v. Webasto Roof Systems, Inc., 570 *464 Fed.Appx. 474, 477 (6th Cir. 2014) (quoting Noel v. Elk Brand Mfg. Co., 53 S.W.3d 95, 98 (Ky. Ct. App. 2000), and Firestone Textile Co., 666 S.W.2d at 731 (footnote omitted) (internal quotation marks omitted)). Although UPS SCS continues to deny that it fired Holly because of his possession of a firearm, because Holly lost statutory protection—even just for one day—UPS SCS is not prohibited by Kentucky law from firing Holly for that very reason.[6] In other words, if we assume UPS SCS fired Holly because of the firearm incident (i.e., that UPS SCS’s stated reasons for terminating Holly’s employment are, in fact, pretexts), what difference does it make? Holly wants a jury to find that UPS SCS actually fired him because of the gun incident, but UPS SCS is within its rights to fire an employee who may have violated company policy[7] and whose actions fell outside the protection of Kentucky law.
III. Conclusion
Because Holly cannot show that a statutory or public policy exception to Kentucky’s at-will employment rule applies to him, the district court was correct in granting summary judgment for UPS SCS and Fletcher. For that reason, we affirm the district court.

. After the litigation started in the instant case, UPS SCS elaborated on these reasons in an interrogatory, stating that the reasons for Holly’s termination were: (1) misusing company time; (2) exhibiting poor decision-making skills; (3) putting a subordinate in an awkward and potentially risky position; and (4) general performance issues,

. He voluntarily dismissed the latter two claims as to Fletcher and sought leave to amend his complaint to reflect the dismissal. The district court allowed the amendment and denied Fletcher’s motion to dismiss the remaining claim against him, finding that Holly had stated a plausible claim for relief under § 527.020.

. Section 237.115 pertains to the carrying of concealed weapons in government buildings, which is inapplicable here.

. The dissent makes a strong argument that an employee does not automatically lose statutory protection forever based on his once having removed a concealed handgun from his vehicle on his employer’s property. While this may be true, Holly has not presented a genuine issue of material fact with respect to whether he was fired for legally possessing a concealed handgun in his vehicle at all times before April 1, 2013, and/or at all times after April 1, 2013. It is true that UPS SCS's continuing to deny that it fired Holly because of the April 1 incident has made this case somewhat more difficult to analyze. But in discussing whether a jury could find that UPS SCS’s proffered justifications for dismissing Holly are pretextual, the dissent actually highlights UPS SCS's focus on the activities that occurred on April 1, 2013 (including the internal investigation, Holly's being escorted off *463 UPS SCS property on May 10, 2013, UPS SCS’s staffs emails regarding potential litigation in the aftermath of the April 1 incident, and the theft-of-time argument). Although UPS SCS also stated that Holly’s prior poor performance evaluation was a factor in its determination to fire him, this, alone, does not give rise to a genuine dispute of material fact as to whether Holly was actually fired for keeping his handgun in his vehicle before or after April 1, 2013. Furthermore, we do not understand Kentucky wrongful termination law in this context to create a burden-shifting framework, which the dissent appears to use in its analysis. It is Holly’s burden to demonstrate not only that he was protected by the Kentucky statute, but that UPS SCS fired him for possessing a handgun in his vehicle. He has not done so here, and—at risk of belaboring the point—any discussion of pretext is irrelevant.

. Indeed Holly’s argument concerning “pretext” is altogether beside the point: because UPS SCS’s decision to fire Holly did not run afoul of Kentucky law, any discussion of pretext is irrelevant. Furthermore, UPS SCS’s allegedly pretextual reasons for terminating Holly’s employment are legally permissible justifications for firing an employee in Kentucky.

. We therefore reject Holly’s argument that because he continued to store his firearm in his vehicle during the five weeks between the April 1 incident and his May 10 suspension/termination, UPS SCS violated Kentucky law when it later chose to fire him.

. UPS SCS’s policy is not directly at issue here, but Holly implies that UPS SCS “was attempting to enforce its Crisis Management & Workplace Violence Prevention Policy prohibiting the possession and/or use of weapons by any employee on UPS property, regardless of any legal rights and protections afforded Holly under [Ky. Rev. St. §§ 527.020, 237.110, 237.106].” The fact is, however, that nothing in Kentucky law prohibits UPS from proscribing firearms on its property that are not concealed in its employees’ vehicles, See Ky. Rev. Stat. § 237.110(17).