## Kentucky Military Institute v. Bramblet.

(Decided March 24, 1914.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch Number Three).

1. Schools—Provision as to Discipline—Violation of by Student—Hazing—Action by Parent to Recover Tuition Paid Following Expulsion of Son—Counterclaim.—In an action by a father to recover tuition paid for his son following the son's expulsion from school after having been found guilty of hazing, the counterclaim for the unpaid tuition for the scholastic year was properly disallowed, but the father having entered the boy for the school term, paying in advance $200.00, he obligated himself for so much of that term as that sum would pay, and the boy by his conduct having forfeited his right to remain in school, thereby depriving the school from carrying out its contract, the father is not entitled to recover any portion of the amount paid.

2. Schools—Hazing—Expulsion.—The conduct of the student in being guilty of hazing was in violation of the published rules with which he was familiar, and was of such a character as to warrant expulsion.

3. Schools—Hazing—Instructions.—It was error to submit to the jury the question as to whether the regulation with reference to hazing 'was just or reasonable, or the abstract question as to whether there was just or reasonable cause for the dismissal. The court being of the opinion that the rule was reasonable, it became the province of the jury to try the question as to the boy's guilt, and as to this there was no question, for the facts were admitted.

SAMUEL W. GREENE for appellant.

A. SCOTT BULLITT, JAMES HEMPHILL for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

From a $150 judgment against him and an order dismissing his counterclaim, Colonel Fowler appeals.

Colonel C. W. Fowler is the sole owner and director of the appellant institution, and the name sufficiently describes its character. The institution is located in Jefferson County, and has been owned and controlled by Colonel Fowler for a number of years. The appellee's boy, Henry Bramblet, entered the school in the fall of 1909, and remained throughout that year, and the following, and re-entered for his third year in the fall of 1911. About thirty days after the term began the boy, Henry

Bramblet, with two other boys, was found guilty of hazing, and expelled from the school.

This suit was instituted by the father to recover $200.00, the amount which he had paid Colonel Fowler, as tuition, upon his son's entrance at the beginning of this third term. Appellant, by answer, justified the expulsion, claimed a right to retain the $200.00 paid in advance, and, by way of counter-claim, alleged that Bramblet was indebted to him in the sum of $267.45, the unpaid part of the tuition for that scholastic year, together with certain other fixed charges aggregating the above amount. To sustain the plea and counterclaim, appellant relied upon the following provisions contained in his published catalogue:

"If a pupil be dismissed or expelled no part of the fixed charges will be refunded."

Another provision is as follows:

"A pupil is entered for the year, hence, no deduction will be made from the fixed charges four hundred and fifty ($450.00) dollars, except for absence caused by bona fide sickness protracted beyond four weeks; then the loss beyond this time will be divided with the parent."

It seems the tuition fee at this school had been raised, since Henry Bramblet first entered, from $400.00 to $450.00, but Colonel Fowler had never insisted upon appellee paying the advanced price, in fact, had agreed that he might continue under the old system. The details of the old system as to time and manner of payment is not definitely shown. As above indicated, Colonel Fowler insists that Bramblet entered the boy for the full term, and was therefore obligated to pay the full amount of $400.00, unless the boy should be absent longer than four weeks on account of bona fide sickness. In Mr. Bramblet's case there was clearly a waiver of the 1911 catalogue requirement as to the amount of tuition, and also as to time of payment. If the 1911 catalogue is not the contract in that respect, then there is no contract proven to warrant a recovery on the counterclaim. In view of the state of the record on this proposition, we are of opinion that Colonel Fowler was not entitled to recover on his counterclaim. However, appellee Bramlet cannot escape the conclusion that when his boy entered the school for the 1911 term, and he paid in advance two hundred ($200.00) dollars as tuition, he obligated himself for so much of that term as $200.00 would pay for. His

right to recover any portion of same depends altogether on whether the boy, by his conduct, forfeited his right to longer remain in school, and in that way deprived Colonel Fowler of carrying out his part of the contract, to-wit: to keep and instruct the boy for the period covered by the $200.00 payment. The published catalogue contains this provision.

"Notice: The following are absolutely forbidden: Hazing, playing games of chance, or having in possession the materials therefor; the use or possession of intoxicating drinks; profane or indecent language; owning or reading demoralizing papers, books or pictures, smoking cigarettes or chewing tobacco; having in possession concealed weapons; borrowing or lending money; contraction of debts and selling clothes, without permission of the superintendent."

The boy admits that he had a catalogue before he entered the school for his first term, that he saw them as they were issued every year thereafter, and that he was familiar with the above provision as to discipline. He also admits that at the beginning of each term there was delivered to him, as well as to the other students, what was called the "Blue Book," containing special instructions and directions with reference to discipline, and conduct of the pupils, and that he was aware that the "Blue Book" contained this provision:

"Hazing is defined to be striking, laying hands upon, treating with violence, or offering to do bodily harm to a new cadet with intent to punish or injure him; or other treatment of a tyrannical, abusive, shameful, insulting or humiliating nature."

There is no dispute as to the facts constituting the hazing. One night, about nine o'clock, some thirty days after the term began, Henry Bramblet, with two other boys, took a new cadet into his room, and what occurred is here related in his own language:

"We called this boy Steffey down to our room, and in the meantime, Major McGowan (Head Master) had gotten word of it, and thought there was hazing going on in our room up there, and the boy, we took him down there, talked to him politely, told him to show us more respect, brush up on his control, and we told him to lay across the bed and we flapped him a few times with our belts. And Major McGowan was looking in the window

and he made us quit, told us to report to Colonel Fowler's office.''

It is too plain for argument that this conduct was in direct violation of the published rules, and that the offense was of such a character as to warrant expulsion for their violation. The boys reported immediately to Colonel Fowler's office, and within fifteen minutes he had expelled them from school. The court instructed the jury as follows:

"When the plaintiff entered his son, Henry Bramblet, as a student at the Kentucky Military Institute, he was bound by the public announcement of the school in its published catalogue of the conditions upon which students would be received therein and the terms, and time of payment for the services rendered by the school in the education of the student; and it was the duty of the said Henry Bramblet to obey all reasonable rules and regulations adopted by the Managers of said school for the control of its students, *and if you shall believe from the evidence that Henry Bramblet was dismissed from said school during its term of 1911-12, without just or reasonable cause therefor, then you will find a verdict for the plaintiff, W. L. Bramblet, etc.*''

Appellant complains that the court should have peremptorily instructed the jury to find for him, and also complains that the instruction above quoted was erroneous and prejudicial to him. That part of the instruction is certainly correct, which holds that when the plaintiff entered his son as a student in the school, he was bound by its published catalogue, and that it was the duty of Henry Bramblet to obey all reasonable rules and regulations adopted by the managers of the school for the control of students, for the proof did not show a waiver of any of the disciplinary rules. But it was error for the court to submit to the jury the question as to whether the rule or regulaton with reference to hazing was just or reasonable, or the abstract question as to whether there was just or reasonable cause for his dismissal. They were questions which addressed themselves to the court, and should have there been settled. The court being of opinion that the rule was reasonable, it then became the province of the jury to try the question as to whether the boy was guilty of conduct forbidden by the rule. As to this, however, there was no question, for the facts were admitted.

In the recent case of Gott v. Berea College, 156 Ky., 380, this court had under consideration this question of the reasonableness of rules of an institution of learning, and the power of its officers to make and enforce them. We there held:

"College authorities stand *in loco parentis* concerning the physical and moral welfare and mental training of the pupils, and we are unable to see why to that end they may not make any rule or regulation for the government, or betterment of their pupils that a parent could for the same purpose. Whether the rules or regulations are wise, or their aims worthy, is a matter left solely to the discretion of the authorities or parents as the case may be, and in the exercise of that discretion the courts are not disposed to interfere, unless the rules and aims are unlawful, or against public policy."

In 7 Cyc., 288, the rule is thus stated:

"A college or university may prescribe requirements for admission and rules for the conduct of its students and one who enters as a student impliedly agrees to conform to such rules of government."

Unless such rules are unlawful or against public policy, the courts will not interfere or revise them, nor will they afford relief in case of their enforcement, unless those whose duty it is to enforce them act arbitrarily, and for fraudulent purposes. There is no such plea in this case. The boy was guilty of violating the rule, and this subjected him to the penalty meted out to him. It is true, there is nothing in the record to show that he had ever been guilty of a similar offense, and no complaint is made as to his previous conduct in the school, but it will not do to say that Colonel Fowler acted arbitrarily, or with injustice because he did not condone this offense, or give the boy another chance. To say the least, he was under no such legal duty.

We are of opinion that appellee has failed to make out a case, and that the lower court should have peremptorily instructed the jury to so find.

The judgment is, therefore, reversed for proceedings in conformity herewith.