**Michael MITCHELL, Appellant,**

v.

**UNIVERSITY OF KENTUCKY,
et al., Appellees.**

Nos. 2010–SC–000762–TG,
2010–CA–002119–MR.

Supreme Court of Kentucky.

April 26, 2012.

Christopher Derek Hunt, Lexington, KY, Counsel for appellant.

Barbara Ann Kriz, Baker, Kriz, Jenkins, Prewitt & Jones, PSC, Lexington, KY, Counsel for appellees.

Gregory N. Stivers, Kerrick, Stivers, & Coyle, PLC, Bowling Green, KY, Counsel for Amici Curiae Council of Postsecondary Education, Eastern Kentucky University, Kentucky State University, Morehead State University, Murray State University, Northern Kentucky University, University of Louisville, and Western Kentucky University.

Leslie B. Goff Sanders, Webb Sanders PLLC, White House, TN, Counsel for

Amicus Curiae The National Rifle Association.

Wesley Reed Butler, Barnett Benvenuti & Butler PLLC, Lexington, KY, Counsel for Amicus Curiae Kentucky Hospital Association.

Opinion of the Court by Justice SCHRODER.

Appellant Michael Mitchell appeals from an order of the Fayette Circuit Court granting summary judgment in favor of Appellees, the University of Kentucky and several of its employees and entities (collectively "UK"), in a suit where Mitchell claimed UK terminated his employment in violation of public policy. We conclude that Mitchell's discharge was contrary to a fundamental and well-defined public policy, i.e., the right to bear arms as evidenced by the Kentucky Revised Statutes. We further conclude that an explicit legislative statement prohibited Mitchell's discharge, and that the reason for his discharge was his exercise of a right conferred by well-established legislative enactments. Therefore, UK was not entitled to summary judgment, and we remand for further proceedings.

## I. BACKGROUND

The facts in this case are almost entirely undisputed. In 2009, Mitchell was employed at-will as an anesthesia technician at the University of Kentucky Chandler Medical Center, while also attending the University as a graduate student. He had a valid license to carry a concealed deadly weapon pursuant to KRS 237.110 ("concealed carry license"). On April 22, 2009, several of Mitchell's coworkers were under the impression that he had a firearm in his employee locker. The employees reported this to hospital administration.

Hospital administrators contacted the University of Kentucky Police Department. When questioned, Mitchell denied having a firearm in his locker. Police and hospital administrators searched Mitchell's locker with his permission, but found no weapons. Mitchell informed officers that he had a concealed carry license and admitted that he kept a firearm in his vehicle, which was parked on University property at Commonwealth Stadium. UK suspended Mitchell's employment pending an investigation.

Campus police escorted Mitchell to his car, where he showed them the semiautomatic pistol he had stored in his vehicle. In their respective briefs, the parties agree that Mitchell's weapon was stored in the vehicle's glove compartment. However, at an unemployment benefits hearing, Mitchell testified that the weapon was stored in his vehicle's armrest. Police confiscated the weapon pending an investigation. On April 29, 2009, the University terminated Mitchell's employment for violation of its policy prohibiting possession of a deadly weapon on University property or while conducting University business.

Mitchell filed suit, alleging termination in violation of public policy, specifically, his right to bear arms as set forth in the United States Constitution, the Kentucky Constitution, and the Kentucky Revised Statutes. After interpreting the relevant statutory provisions, the circuit court concluded that UK terminated Mitchell pursuant to a policy authorized by law. The circuit court granted summary judgment in favor of UK, finding that there was no genuine issue of material fact, and that UK was entitled to judgment as a matter of law. After filing a notice of appeal, Mitchell filed a motion to transfer the appeal from the Court of Appeals to this Court. This Court then granted Mitchell's motion. CR 74.02.

## II. ANALYSIS

"The standard of review on appeal of a summary judgment is whether

the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Coomer v. CSX Transp., Inc.,* 319 S.W.3d 366, 370 (Ky.2010) (quoting *Scifres v. Kraft,* 916 S.W.2d 779, 781 (Ky.App.1996)). "Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo.*" *Lewis v. B & R Corp.,* 56 S.W.3d 432, 436 (Ky.App.2001) (footnote omitted).

 Mitchell contends he was wrongfully terminated in violation of public policy. Ordinarily, an at-will employee may be discharged "for good cause, for no cause, or for a cause that some might view as morally indefensible.". *Firestone Textile Co. Div. v. Meadows,* 666 S.W.2d 730, 731 (Ky.1983) (citing *Production Oil Co. v. Johnson,* 313 S.W.2d 411 (Ky.1958); *Scroghan v. Kraftco Corp.,* 551 S.W.2d 811 (Ky.App.1977)). However, there is "a narrow public policy exception" to the terminable-at-will doctrine, which is subject to the following limitations:

1) The discharge must be contrary to a fundamental and well-defined public policy as evidenced by existing law.

2) That policy must be evidenced by a constitutional or statutory provision.

3) The decision of whether the public policy asserted meets these criteria is a question of law for the court to decide, not a question of fact.

*Grzyb v. Evans,* 700 S.W.2d 399, 401 (Ky. 1985). *See also Firestone,* 666 S.W.2d at 731 (quoting *Brockmeyer v. Dun & Bradstreet,* 113 Wis.2d 561, 335 N.W.2d 834, 835 (1983)). In addition, a discharge is actionable as being contrary to public policy only (1) where there are "explicit legislative statements prohibiting the discharge," (2) where "the alleged reason for the discharge ... was the employee's failure or refusal to violate a law in the course of employment," or (3) when "the reason for the discharge was the employee's exercise of a right conferred by well-established legislative enactment." *Hill v. Kentucky Lottery Corp.,* 327 S.W.3d 412, 422 (Ky. 2010) (quoting *Grzyb,* 700 S.W.2d at 402).

It is beyond question that public institutions of higher education have "the power and authority to govern and control the method and purpose of use of property owned or occupied by their respective institution[s]...." KRS 164.975(1). In *O'Leary v. Commonwealth,* our predecessor Court recognized the authority of a public university to control the use of its property. 441 S.W.2d 150, 156–57 (Ky. 1969). The narrow question presented in this case is whether any fundamental and well-defined public policy limits the authority of a university to control the possession of deadly weapons on its campus, and therefore renders Mitchell's termination unlawful as a violation of public policy.

██ "[T]he long-standing practice of this Court is to refrain from reaching constitutional issues when other, non-constitutional grounds can be relied upon." *Baker v. Fletcher,* 204 S.W.3d 589, 597–98 (Ky. 2006) (citing *Dawson v. Birenbaum,* 968 S.W.2d 663 (Ky.1998)). Therefore, to determine whether UK's termination of Mitchell violated public policy, i.e., the right to bear arms, we begin by examining the relevant sections of the Kentucky Revised Statutes.

### A. Provided Mitchell Stored His Weapon in His Vehicle's Glove Compartment, His Discharge Was Contrary to KRS 527.020(8)

Mitchell asserts a cause of action for termination in violation of public policy

under KRS 527.020(8).[1] KRS 527.020 is a criminal statute, which prohibits the carrying of a concealed weapon. KRS 527.020(1). The statute then proceeds to describe exceptions. KRS 527.020(8) applies generally to all persons:[2]

> A firearm or other deadly weapon shall not be deemed concealed on or about the person if it is located in a glove compartment, regularly installed in a motor vehicle by its manufacturer, regardless of whether said compartment is locked, unlocked, or does not have a locking mechanism. **No person or organization, public or private, shall prohibit a person from keeping a firearm or ammunition, or both, or other deadly weapon in a glove compartment of a vehicle in accordance with the provisions of this subsection.** Any attempt by a person or organization, public or private, to violate the provisions of this subsection may be the subject of an action for appropriate relief or for damages in a Circuit Court or District Court of competent jurisdiction.

(Emphasis added.)

■ "When the words of the statute are clear and unambiguous and express the legislative intent, there is no room for construction or interpretation and the statute must be given its effect as written." *McCracken County Fiscal Court v. Graves*, 885 S.W.2d 307, 309 (Ky.1994) (quoting *Lincoln County Fiscal Court v. Dep't of Public Advocacy*, 794 S.W.2d 162,

163 (Ky.1990)); *see also Griffin v. City of Bowling Green*, 458 S.W.2d 456, 457 (Ky. 1970). The words of KRS 527.020(8) are clear and unambiguous. It forbids a public organization, such as a university, from prohibiting the possession of a firearm in the glove compartment of a vehicle. There can be no other reasonable interpretation of the statutory language.

Provided Mitchell stored his weapon in his vehicle's glove compartment, UK violated KRS 527.020(8). The statute also provides Mitchell with a cause of action "for appropriate relief or for damages in a Circuit Court or District Court of competent jurisdiction." Mitchell's discharge was therefore contrary to KRS 527.020(8), provided his weapon was in fact stored in the glove compartment of his vehicle. Because there is also evidence in the record that Mitchell stored his weapon in his vehicle's armrest,[3] we now consider the applicability of KRS 527.020(4).

**B. Because Mitchell Had a Valid Concealed Carry License, His Discharge Was Contrary to KRS 527.020(4)**

■ KRS 237.110 authorizes the issuance of, and establishes standards for, concealed carry licenses. KRS 237.115 concerns the construction of KRS 237.110. It states, in relevant part,

> **Except as provided in KRS 527.020,** nothing contained in KRS 237.110 shall be construed to limit, restrict, or prohibit in any manner the right of a college,

---

1. Subsequent to the events at issue in this case, the General Assembly amended KRS 527.020(8). *See* 2011 Ky. Acts ch. 64, § 1. Because these revisions are not retroactive, we address the statute as it was written at the time of Mitchell's termination.

2. The current version of the statute specifies that it does not apply "to any person prohibited from possessing a firearm pursuant to KRS 527.040" (i.e., persons convicted of a felony).

3. Under the current version of KRS 527.020(8), a weapon is deemed to not be concealed if it is stored in "any enclosed container, compartment, or storage space installed as original equipment in a motor vehicle by its manufacturer, including but not limited to a glove compartment, center console, or seat pocket...."

university, or any postsecondary education facility, including technical schools and community colleges, to control the possession of deadly weapons on any property owned or controlled by them. . . .

KRS 237.115(1) (emphasis added). Thus, universities, including UK, have an implicit right to control the possession of deadly weapons on property under their control. But this right is qualified by KRS 527.020.

KRS 527.020(8), discussed above, applies to persons regardless of whether they hold concealed carry licenses. KRS 527.020(4), by contrast, applies only to persons, like Mitchell, licensed to carry a concealed deadly weapon:

> Persons, except those specified in subsection (5) of this section, licensed to carry a concealed deadly weapon pursuant to KRS 237.110 may carry a firearm or other concealed deadly weapon on or about their persons at all times within the Commonwealth of Kentucky, if the firearm or concealed deadly weapon is carried in conformity with the requirements of that section. Unless otherwise specifically provided by the Kentucky Revised Statutes or applicable federal law, no criminal penalty shall attach to carrying a concealed firearm or other deadly weapon with a permit at any location at which an unconcealed firearm or other deadly weapon may be constitutionally carried. **No person or organization, public or private, shall prohibit a person licensed to carry a concealed deadly weapon from possessing a firearm, ammunition, or both, or other deadly weapon in his or her vehicle in compliance with the provisions of KRS 237.110 and 237.115.** Any attempt by a person or organization, public or private, to violate the provisions of this subsection may be the subject of an action for appropriate re-

lief or for damages in a Circuit Court or District Court of competent jurisdiction. (Emphasis added.)

 "Only if the statute is ambiguous . . . or otherwise frustrates a plain reading, do we resort to the canons or rules of construction. . . ." *King Drugs, Inc. v. Commonwealth,* 250 S.W.3d 643, 645 (Ky.2008) (citing *Stephenson v. Woodward,* 182 S.W.3d 162 (Ky.2005)). When the application of two statutes leads to an apparent conflict, this Court has a duty, to the extent possible, to harmonize the statutes and give force and effect to each. *Spees v. Kentucky Legal Aid,* 274 S.W.3d 447, 450 (Ky.2009); *see also MPM Financial Group, Inc. v. Morton,* 289 S.W.3d 193, 198 (Ky.2009). However, when statutory provisions are in conflict and cannot be harmonized, "our duty is to construe the statutes so as to ascertain and give effect to the intent of the General Assembly." *Johnson v. Branch Banking & Trust Co.,* 313 S.W.3d 557, 559 (Ky.2010).

On its face, the emphasized portion of KRS 527.020(4) is not ambiguous. It forbids public and private organizations from imposing any prohibition on possession of a deadly weapon in a vehicle, provided that (1) the person so possessing is properly licensed to carry a concealed deadly weapon, and (2) the person is in compliance with KRS 237.110 (which authorizes and regulates concealed carry licenses) and KRS 237.115 (which provides rules of construction for KRS 237.110).

However, when KRS 527.020(4) is read in conjunction with KRS 237.115(1) and applied to this case, a clear conflict arises. KRS 237.115(1) allows institutions of postsecondary education to control weapons on their property, "[e]xcept as provided in KRS 527.020. . . ." However, KRS 527.020(4) refers to a person possessing a deadly weapon "in his or her vehicle in compliance with the provisions of KRS 237.110 **and** 237.115." (emphasis added).

This creates circularity in the two statutes, with each referring back to the other as controlling.

To resolve this conflict, we look to the intent of the General Assembly. First, KRS 527.020(4), the provision relied upon by Mitchell, applies only to those licensed to carry concealed deadly weapons pursuant to KRS 237.110. KRS 237.115, the conflicting statute, provides guidance in the construction of KRS 237.110. However, KRS 237.110 itself provides a clear rule of construction, stating that "[t]his section shall be liberally construed to carry out the constitutional right to bear arms for self-defense." KRS 237.110(19). This clearly expresses the legislature's intent and favors the right to bear arms of a concealed carry licensee.

In addition, the General Assembly has expressed a strong public policy in favor of exempting a person's vehicle from restrictions on the possession of deadly weapons. For example, KRS 527.070, the statute that criminalizes possession of a weapon on primary and secondary school property,[4] specifically exempts an adult who possesses a firearm contained in his or her vehicle, provided the firearm is not removed. KRS 527.070(3)(a). KRS 237.106(1) specifically forbids any person (including an employer) from prohibiting a person from possessing a firearm in his or her vehicle, provided the person is legally entitled to possess the firearm. *See also* KRS 237.110(17) (forbidding private employers from prohibiting an employee from keeping a weapon is his or her vehicle, provided the employee has a concealed carry license).

■ To the extent that KRS 527.020(4) and KRS 237.115(1) are in direct conflict, we hold that the conflict must be resolved in favor of KRS 527.020(4). We base this on the General Assembly's explicit statement that the concealed carry licensing statute is to be liberally construed in favor of the right to bear arms, as well as the legislature's clearly expressed policy of exempting a person's vehicle from firearms regulation.

This interpretation best accomplishes the goal of giving effect to the words of both statutes. It also best harmonizes the two statutes by protecting the right of concealed carry licensees to store weapons anywhere in their vehicle, pursuant to KRS 527.020(4), while permitting universities to control[5] the possession of deadly weapons on *all other property*, pursuant to KRS 237.115(1), subject only to the general limitations of KRS 527.020.[6]

---

4. This statute does not apply to "institutions of postsecondary or higher education." KRS 527.070(1).

5. The parties have argued at length over what is meant by the use of the term *"control* the possession of deadly weapons" with respect to universities in KRS 237.115(1), while the same statute recognizes the right of local governments "to *prohibit* the carrying of concealed deadly weapons by licensees in that portion of a building actually owned, leased, or occupied by that unit of government." (emphasis added). We need not exhaustively consider this issue to resolve this case. We note, however, that a university has a right to "control" *all* deadly weapons on *all property* it owns or controls. KRS 237.115(1). By contrast, a local government's right to "pro-

hibit" applies only to *concealed* deadly weapons, and only in a *building*. *Id.* Nothing in this opinion should be construed to limit a postsecondary educational institution's generally recognized right to control the possession of deadly weapons outside of the limited circumstances exempted from control by KRS 527.020.

6. In addition to the exceptions in KRS 527.020(4) and (8), KRS 527.020 authorizes a number of other persons to carry concealed deadly weapons under various circumstances. *See* KRS 527.020(2) (peace officers and certified court security officers, United States mail carriers, and agents and messengers of express companies when necessary for their protection in the discharge of their official duties); KRS 527.020(3) (conservation offi-

## C. Despite Being Part of the Penal Code, KRS 527.020 Authorizes a Civil Cause of Action

 As explained above, pursuant to KRS 527.020(4) and (8), UK improperly prohibited Mitchell from keeping a firearm in his glove compartment (pursuant to KRS 527.020(8)) or anywhere else in his vehicle (pursuant to KRS 527.020(4), because Mitchell had a concealed carry license). We are not persuaded by UK's argument that, because KRS 527.020 is a criminal statute, it has no applicability to a civil suit for wrongful termination. While KRS 527.020 is primarily a criminal statute, which is codified in the penal code, KRS 527.020(4) and (8) also specifically contemplate and authorize a *civil cause of action.* "Any attempt by a person or organization, public or private, to violate the provisions of this subsection may be the subject of **an action for appropriate relief or for damages** in a Circuit Court or District Court of competent jurisdiction." KRS 527.020(4) & (8) (emphasis added).

## D. Because Mitchell Was Legally Entitled to Possess a Firearm in His Vehicle, His Discharge Was Contrary to KRS 237.106

 Mitchell also asserts that his discharge was contrary to KRS 237.106. It provides, in relevant part:

(1) No person, including but not limited to an employer, who is the owner, lessee, or occupant of real property shall prohibit any person who is legally entitled to possess a firearm from possessing a firearm, part of a firearm, ammunition,

or ammunition component in a vehicle on the property.

. . . .

(4) An employer that fires, disciplines, demotes, or otherwise punishes an employee who is lawfully exercising a right guaranteed by this section and who is engaging in conduct in compliance with this statute shall be liable in civil damages. An employee may seek and the court shall grant an injunction against an employer who is violating the provisions of this section when it is found that the employee is in compliance with the provisions of this section.

(5) The provisions of this section shall not apply to any real property:

. . . .

(c) Where a section of the Kentucky Revised Statutes specifically prohibits possession or carrying of firearms on the property.

UK argues that subsection (5)(c) relieves it of liability for terminating Mitchell, because KRS 237.115 is "a section of the Kentucky Revised Statutes" that "specifically prohibits possession or carrying of firearms on the property."

As explained above, KRS 237.115, while recognizing the implicit right of a university to control weapons on its campus, is limited by KRS 527.020. Because KRS 527.020(4) and (8) specifically permitted Mitchell to store a firearm in his vehicle, even while on University property, UK has failed to point to "a section of the Kentucky Revised Statutes [that] specifically

---

cers of the Department of Fish and Wildlife Resources and police officers directly employed by state, county, city, or urban-county governments at all times if authorized by their respective departments); KRS 527.020(5) (prosecutors and active and retired justices and judges in all places except detention facilities, provided they hold a valid concealed carry license); KRS 527.020(6)

(sheriffs, jailers, deputies, and other corrections employees at all times in all places if expressly authorized and in compliance with training requirements); KRS 527.020(7) (a full-time paid peace officer or elected sheriff from another jurisdiction at all times in Kentucky provided the other jurisdiction accords Kentucky peace officers the same rights by law).

prohibits possession or carrying of firearms on the property." KRS 237.106(5)(c). Mitchell's discharge was therefore contrary to KRS 237.106(4).

### III. CONCLUSION

Mitchell has established that his discharge was contrary to a fundamental and well-defined public policy, i.e., the right to bear arms, as evidenced by existing statutory provisions, namely, KRS 237.106, KRS 237.110, and KRS 527.020. *See Grzyb,* 700 S.W.2d at 401. Further, Mitchell has established that an explicit legislative statement, KRS 237.106(4), prohibited his discharge, and that the reason for his discharge was his exercise of a right conferred by well-established legislative enactments in KRS 527.020(4) and (8), *See Hill,* 327 S.W.3d at 422. UK was not entitled to judgment as a matter of law.

For the foregoing reasons, the judgment of the Fayette Circuit Court is reversed. The case is hereby remanded to that court for proceedings consistent with this opinion.

CUNNINGHAM, NOBLE, and VENTERS, JJ., concur. SCOTT, J., concurs in result only without separate opinion. ABRAMSON, J., concurs in result only by separate opinion in which MINTON, C.J., joins.

ABRAMSON, J., concurring in result only.

Although I am obliged, given the current statutes, to concur in the result the majority reaches in this case—that the University of Kentucky's termination of Mr. Mitchell's employment was wrongful if it is established that he kept his gun in his glove compartment and not in some other part of his vehicle—I write separately because there are significant aspects of the majority's analysis with which I disagree. I do not agree that the statutes involved— KRS 237.110, KRS 237.115, and KRS 527.020—are circular or involve conflicts in any way suggesting that KRS 237.115 is superseded or invalid. Nor do I agree that aside from the express exception created by KRS 527.020(8) there is anything in the public policy of this Commonwealth that would preclude the University from sanctioning a student or an employee who violates its rules regarding guns on its property.

In their particulars the statutes at issue are somewhat complex, but the overall statutory structure is clear enough. KRS 237.110 mandates the issuance to qualified applicants of a license to carry concealed a deadly weapon and defines who is a qualified applicant. KRS 527.020(4) then gives substance to the license by providing that "[p]ersons ... licensed to carry a concealed deadly weapon pursuant to KRS 237.110 may carry a firearm or other concealed deadly weapon on or about their persons at all times within the Commonwealth of Kentucky, if the firearm or concealed deadly weapon is carried in conformity with the requirements of that section."

The concealed carry privilege is not unlimited, however. KRS 527.020(4) further provides that "[n]o person or organization, public or private, shall prohibit a person licensed to carry a concealed deadly weapon from possessing a firearm, ammunition, or both, or other deadly weapon in his or her vehicle in compliance with the provisions of KRS 237.110 and KRS 237.115." KRS 237.115, of course, is the statute providing that the concealed carry law is not to be construed "to limit, restrict, or prohibit in any manner the right of a college, university, or any postsecondary education facility, including technical schools and community colleges, to control the possession of deadly weapons on any property owned or controlled by them." Under KRS 527.020(4), then, the University's

right to control deadly weapons on its property remains intact even with respect to deadly weapons in a licensed carrier's vehicle.[7]

However, as the licensed carrier's rights are not absolute, neither are the University's. For exceptions to the University's right, KRS 237.115 refers back to KRS 527.020, a statute in which several of the sections identify persons or officials whose concealed carry rights enjoy heightened protection.[8] Among such persons are peace officers; certified court security officers; United States mail carriers, KRS 527.020(2); policemen, KRS 527.020(3); Commonwealth attorneys; county attorneys; judges, both active and retired, KRS 527.020(5); sheriffs and their deputies; jailers and their deputies; and certain corrections department officials and employees, KRS 527.020(6). All of these persons are excepted from the University's general right to control deadly weapons on its property. These exceptions are not surprising, and to this point the statutes seem to work together smoothly enough.

The rub comes, of course, with KRS 527.020(8). Unlike the preceding sections, which identify particular persons and officials whose sensitive positions can be thought to justify concealed carry rights less restricted than an ordinary license holder's, KRS 527.020(8) applies to carriers more generally. At the time Mr. Mitchell was discharged, it provided that a deadly weapon, including a firearm, "shall not be deemed concealed on or about the person if it is located in a glove compartment, regularly installed in a motor vehicle by its manufacturer, regardless of whether said compartment is locked, unlocked, or does not have a locking mechanism."[9] Because under KRS 237.115, a university can control deadly weapons on its property whether concealed or not, this portion of

---

7. Much like KRS 527.020(4), KRS 237.106 provides that no owner, lessee, or occupant of real property, including an employer, "shall prohibit any person who is legally entitled to possess a firearm from possessing a firearm, part of a firearm, ammunition, or ammunition component in a vehicle on the property." This statute obviously conflicts with the University's express right under KRS 237.115 and KRS 527.020(4) to control the presence of firearms in vehicles in its property, and since these latter statutes address the rights of one particular kind of property owner—postsecondary school educational institutions—whereas KRS 237.106 addresses property owners in general, the more particular statutes should control, and the University's right should not be deemed affected by KRS 237.106. *Light v. City of Louisville,* 248 S.W.3d 559 (Ky.2008) (applying the rule that a more specific statute controls a more general one.). The majority's contrary holding disregards this standard rule of statutory construction.

8. KRS 237.115 provides that "[e]xcept as provided in KRS 527.020, nothing contained in KRS 237.110 shall be construed ..." The majority understands the reference to KRS 527.020 to create a circle between the two statutes—KRS 527.020(4) applying except for KRS 237.115, and KRS 237.115 applying except for KRS 527.020(4)—and then uses the purported circularity as the occasion for its claim that KRS 237.115 has been superseded by KRS 527.020(4). The statutes, however, while perhaps not models of clarity, are not circular. KRS 237.115 does not refer back to KRS 527.020(4). It refers to KRS 527.020 in its entirety and makes perfect sense if understood as excepting from KRS 237.115 all those subsections of KRS 527.020 which do not, as KRS 527.020(4) does, incorporate KRS 237.115. Our duty is to construe statutes so as to avoid conflicts, if possible, and to give effect to every provision. *Light v. City of Louisville,* 248 S.W.3d at 563 (citing *City of Bowling Green v. Board of Education of Bowling Green Independent School District,* 443 S.W.2d 243 (Ky.1969)). The majority instead has created a conflict so as to limit the effect of KRS 237.115.

9. This language was revised in 2011 to include any factory-installed enclosed container, compartment or storage space including a center console or seat pocket.

the statute, first enacted in 1978, would not affect its authority.

However, KRS 527.020(8) continues with the following language added in 2002: "No person or organization, public or private, shall prohibit a person from keeping a firearm or ammunition, or both, or other deadly weapon in a glove compartment of a vehicle in accordance with the provisions of this subsection." [10] With the amendment, is this subsection now meant to be among the KRS 527.020 exceptions to KRS 237.115? That is, notwithstanding its general authority to control deadly weapons on its property, and notwithstanding its express authority under KRS 527.020(4) to control deadly weapons in a licensed carrier's vehicle, are we to understand that the University is now powerless to keep its students and employees from stashing loaded guns in the unlocked glove compartments of their unlocked vehicles, not only powerless but actually subject to student lawsuits if it seeks to rid its parking lots of that hazard? That result strikes me, as I am sure it will strike many parents, as an affront to common sense. It is certainly a radical departure from the long practice in this Commonwealth of allowing universities and other institutions of post-secondary education to decide for themselves how best to safeguard their students. *Centre College v. Trzop*, 127 S.W.3d 562 (Ky.2004) (citing *Kentucky Military Inst. v. Bramblet*, 158 Ky. 205, 164 S.W. 808 (1914)).

I am constrained, nevertheless, given this Court's duty to uphold the plainly expressed intent of the General Assembly, to agree with the majority that it is the result the statutory language requires. As the majority notes, when the General Assembly meant to exempt universities and colleges and other post-secondary schools from the similar vehicle provisions of KRS 527.020(4) it did so expressly. The unavoidable implication is that had it meant to exempt the University from the glove compartment rule of KRS 527.020(8) it would again have made the exemption express by referencing KRS 237.115. Very reluctantly, therefore, I concur in the majority's result but only because a different statutory analysis compels that same result. If on remand it is determined that Mr. Mitchell's gun was stored in his vehicle's glove compartment, then his termination for having breached the University's safety code was wrongful under KRS 527.020(8).

MINTON, C.J., joins.

---

10. The University maintains that since KRS 527.020 is a penal statute this provision should be understood as forbidding only the criminalization or quasi-criminalization of glove-compartment carrying, not the sort of workplace regulation at issue. It notes that it did not require Mr. Mitchell to park on University property and so did not, in a strict sense of the term, "prohibit" him from carry- ing his gun. Although I agree with the University that the Penal Code is an odd place to find statutes purporting to compel employers and property owners to tolerate unwanted guns in their parking lots, that clearly is what KRS 527.020(4) and KRS 527.020(8) purport to do. The University has provided no authority for its suggestion that penal statutes cannot include such non-penal objects.