RENDERED: DECEMBER 3, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0437-MR

KENTUCKY CONCEALED CARRY
COALITION, INC.                                                          APPELLANT

v.
APPEAL FROM PIKE CIRCUIT COURT
HONORABLE EDDY COLEMAN, JUDGE
ACTION NO. 18-CI-00602

CITY OF PIKEVILLE, KENTUCKY;
JAMES A. CARTER; PHILIP R.
ELSWICK; BOARD OF
COMMISSIONERS CITY OF
PIKEVILLE, KENTUCKY; AND
CITY OF PIKEVILLE EXPOSITION
CENTER CORPORATION                                                      APPELLEES

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; GOODWINE AND McNEILL,
JUDGES.

CLAYTON, CHIEF JUDGE: The Kentucky Concealed Carry Coalition, Inc. ("Appellant") appeals from the Pike Circuit Court's order granting summary judgment in favor of the City of Pikeville (the "City"); the City's mayor, James A. Carter; the City's manager, Philip R. Elswick; the City's Board of Commissioners; and the City of Pikeville Exposition Center Corporation (collectively, the "Appellees") and dismissing the matter with prejudice. Appellant further appeals from the Pike Circuit Court's order granting attorney's fees and costs to Appellees.

Upon review, we reverse both the Pike Circuit Court's order granting summary judgment in favor of Appellees and the Pike Circuit Court's order granting attorney's fees and costs to Appellees and remand the matter for further proceedings in accordance with this Opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant filed a complaint in the Pike Circuit Court on May 15, 2018, against Appellees based on Appellees' alleged violations of Kentucky Revised Statute (KRS) 65.870, which preempts local governments from regulating firearms. In its complaint, Appellant sought a declaratory judgment from the Pike Circuit Court that particular rules, policies, and lease provisions prohibiting all weapons within certain properties owned, leased, and/or controlled by the City violated KRS 65.870. Appellant also sought temporary and permanent injunctions prohibiting the enforcement of such rules, policies, and lease provisions, along

-2-

with a repeal of the offending actions and an award of Appellant's attorney's fees, costs, expert witness fees, and expenses.

Thereafter, the parties filed competing motions for summary judgment and, after holding a hearing on January 24, 2020, the circuit court entered an opinion and order on March 10, 2020, denying Appellant's motion for summary judgment, granting Appellees' motion for summary judgment, and dismissing Appellant's complaint with prejudice. Additionally, on June 10, 2020, the trial court entered an order granting Appellees' attorney's fees as the "prevailing party" in the action. This appeal followed.

Further facts will be discussed as they become relevant to the issues discussed in this Opinion.

## ISSUES

Appellant argues the following issues on appeal: (1) whether the trial court erroneously granted Appellees' motion for summary judgment by misunderstanding the facts, misapplying KRS 65.870 to the facts, and accepting Appellees' reliance on other state and federal laws; (2) whether the trial court erroneously determined that Appellees were the "prevailing party" and thus entitled to attorney's fees; and (3) whether the court awarded unreasonable attorney's fees to Appellees.

## ANALYSIS

### a. Standard of Review

As stated by the Kentucky Supreme Court, "the proper function of summary judgment is to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991) (citation omitted). Thus, the trial court must view the record "in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Id.* (citations omitted). Further, "a party opposing a properly supported summary judgment motion cannot defeat it without presenting at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Id.* at 482. (citations omitted).

Upon appellate review, "[a]n appellate court need not defer to the trial court's decision on summary judgment and will review the issue *de novo* because only legal questions and no factual findings are involved." *Hallahan v. The Courier-Journal*, 138 S.W.3d 699, 705 (Ky. App. 2004) (citations omitted). In reviewing a grant of summary judgment, our inquiry focuses on "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v.*

-4-

*Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996) (citing Kentucky Rules of Civil

Procedure (CR) 56.03).

### b. Discussion

### 1. General Constitutional and Statutory Framework Regarding the Regulation of Firearms in Kentucky

Before addressing the parties' specific arguments in this case, we will

analyze the overall constitutional and statutory framework in Kentucky regarding a

city's or other local government's ability to prohibit or otherwise regulate the open

carrying of firearms, the carrying of concealed firearms, and/or the storage of

firearms contained within vehicles on property owned, leased, or controlled by

such city.

The United States Constitution states that "[a] well regulated Militia,

being necessary to the security of a free State, the right of the people to keep and

bear Arms, shall not be infringed." U.S. CONST. amend. II. Additionally, the

people of Kentucky preserved the protection of this right in Section 1(7) of the

Kentucky Constitution, which states that:

> [a]ll men are, by nature, free and equal, and have certain
> inherent and inalienable rights, among which may be
> reckoned: . . . Seventh: [t]he right to bear arms in
> defense of themselves and of the State, *subject to the*
> *power of the General Assembly to enact laws to prevent*
> *persons from carrying concealed weapons.*

(Emphasis added.)

-5-

Moreover, while the Kentucky Constitution allows the General Assembly to enact laws regarding the carrying of concealed weapons, the General Assembly has specifically preempted other forms of local government from establishing any rule, policy, procedure, ordinance, or "other form of executive or legislative action" that prohibits or otherwise regulates firearms. KRS 65.870. Specifically, the General Assembly enacted KRS 65.870, which provides, in applicable part, that:

> (1) [n]o existing or future city, county, urban-county government, charter county, consolidated local government, unified local government, special district, local or regional public or quasi-public agency, board, commission, department, public corporation, or any person acting under the authority of any of these organizations may occupy any part of the field of regulation of the manufacture, sale, purchase, taxation, transfer, ownership, possession, carrying, storage, or transportation of firearms, ammunition, components of firearms, components of ammunition, firearms accessories, or combination thereof.

Further, "[a]ny existing or future ordinance, executive order, administrative regulation, policy, procedure, rule, or any other form of executive or legislative action in violation of this section or the spirit thereof is hereby declared null, void, and unenforceable." KRS 65.870(2).

Thus, the foregoing statutory language sets forth the General Assembly's intent that no form of local government is permitted to regulate or promulgate any rules, policies, or other forms of executive or legislative action in

-6-

the area of firearm carrying, possession, storage, or transportation. The language of this statute is unambiguous, and no exceptions to the terms of the statute are set forth. *See Bailey v. Reeves*, 662 S.W.2d 832, 834 (Ky. 1984) (where the General Assembly makes "no exceptions to the positive terms of a statute [it] is presumed to have intended to make none.").

### 2. The Open Carrying of Firearms Under Kentucky Law

As stated by a separate panel of this Court, "[i]n Kentucky, a person has the right to carry a firearm openly and, so long as the firearm is in full view, no one may question the person's right to do so." *Pulley v. Commonwealth*, 481 S.W.3d 520, 525 (Ky. App. 2016) (citation omitted). The Court further observed that "[a]s interpreted by Kentucky Courts, this right 'is an exemplification of the broadest expression of the right to bear arms.'" *Id.* (quoting *Holland v. Commonwealth*, 294 S.W.2d 83, 85 (Ky. 1956)). Thus, "[b]earing an unconcealed weapon is not an offense[,]" the Court stressed. *Id.* (citation omitted).

### 3. The Concealed Carrying of Firearms on City Property in Kentucky

In line with Kentucky's constitutional language, the Kentucky General Assembly has enacted various laws authorizing the issuance of and establishing standards for an individual's right to carry concealed weapons. Specifically, under KRS 237.110, once obtained, a license to carry a concealed firearm or other deadly weapon is "valid throughout the Commonwealth and,

except as provided in this section or other specific section of the Kentucky Revised Statutes or federal law, permit[s] the holder of the license to carry firearms, ammunition, or other deadly weapons, or a combination thereof, at any location in the Commonwealth[.]"

Nevertheless, the General Assembly also passed KRS 237.115(2), which provides, in applicable part, that:

> *[t]he legislative body* of a . . . city . . . may, *by statute, administrative regulation, or ordinance*, prohibit or limit *the carrying of concealed deadly weapons* in that portion of a building owned, leased, or controlled by that unit of government.  That portion of a building in which the carrying of concealed deadly weapons is prohibited or limited shall be clearly identified by signs posted at the entrance to the restricted area. . . . ***The provisions of this section shall not be deemed to be a violation of KRS 65.870 if the requirements of this section are followed***.

KRS 237.115(2) (emphasis added).  Consequently, with the enactment of this statute, the General Assembly made a limited delegation of power concerning the regulation of the carrying of concealed weapons to local governments whereby a city government – without otherwise violating the statutory prohibition contained in KRS 65.870 – may prohibit or limit the carrying of concealed deadly weapons in buildings or portions of buildings owned, leased, or controlled by the city.

Accordingly, the General Assembly has specifically required that the only entity entitled to promulgate rules or policies relating to the prohibition of concealed firearms on property owned, leased, or controlled by a city is that city's

legislative body. Moreover, the city's legislative body must do so only via ordinance or administrative regulation and not merely through an informal rule, regulation, or policy. Stated another way, given the specific statutory language of KRS 237.115, the only method by which a city may ban or limit the concealed carrying of firearms in an area owned, leased, or controlled by such city is for the legislative body to properly pass an ordinance or administrative regulation prohibiting or limiting the carrying of concealed firearms in the buildings or portions thereof owned, leased, or controlled by the city.

### 4. The Open or Concealed Storage of Firearms in Vehicles

The General Assembly has legislated that "[n]o person or organization, *public or private*, shall prohibit a person from keeping a loaded or unloaded firearm or ammunition, or both, or other deadly weapon in a vehicle in accordance with the provisions of this subsection." KRS 527.020(8) (emphasis added). The foregoing language applies to persons regardless of whether they hold a concealed carry license.

Additionally, KRS 527.020(4) states that "[n]o person or organization, *public or private*, shall prohibit a person [who is licensed to carry a concealed firearm or other deadly weapon] from possessing a firearm, ammunition, or both, or other deadly weapon in his or her vehicle in compliance with the provisions of . . . [KRS] 237.110, and 237.115." (Emphasis added.) Further, the Kentucky

Supreme Court has noted that the General Assembly has "explicitly" stated "that the concealed carry licensing statute is to be liberally construed in favor of the right to bear arms" and has a "clearly[-]expressed policy of exempting a person's vehicle from firearms regulation." *Mitchell v. University of Kentucky*, 366 S.W.3d 895, 901 (Ky. 2012).

We now turn to an application of the foregoing constitutional and statutory framework to each of the applicable properties involved in this case.

## A. The Eastern Kentucky Exposition Center a/k/a the Appalachian Wireless Arena

Pursuant to KRS 154.40-020, the General Assembly formed the Eastern Kentucky Exposition Center Corporation (the "Expo Corp") "as an independent, de jure municipal corporation and political subdivision of the Commonwealth that shall be a public body corporate and politic" to develop, operate, and manage the Eastern Kentucky Exposition Center (the "Expo Center"). KRS 154.40-050 states that the Expo Corp "shall provide all management functions for the facility and for any other property acquired or leased in accordance with its powers established in this section." Finally, under the same statute, the Expo Corp "shall have the exclusive control of all exhibitions, performances, and concessions in the [Expo Center]." KRS 154.40-050.

In February of 2011, the Expo Corp, as the custodian of the Expo Center by virtue of the foregoing statutory language, leased the Expo Center to the

City (the "Lease"). In the Lease, the City agreed to comply with all applicable laws relating to the premises. Moreover, while the Lease granted the City the right to assign or sublet the premises without the consent of the Expo Corp, the City agreed that no such assignment or sublease released the City from its obligations under the Lease.

Thereafter, in November of 2016, a Kentucky non-profit corporation was created with the Kentucky Secretary of State called the City of Pikeville Exposition Center Corporation (the "City Corp"). The purpose of the City Corp as described in the Articles of Incorporation was to "operate an exposition center and all other lawful purposes." One of the five initial members of the board of directors of the City Corp included James Carter, the City's mayor. Additionally, subsequent annual reports for City Corp listed Philip Elswick, the City manager, as the Chief Executive Officer of the City Corp.

On November 14, 2016, and with an effective date of January 1, 2017, the City and City Corp entered into a sublease agreement (the "Sublease Agreement") in which the City subleased the Expo Center "to its wholly[-]owned non-profit corporation," City Corp. City Corp agreed in the Sublease to "at all times . . . comply with [the Lease between the City and the Expo Corp]."

Appellant alleged in its complaint that the Expo Center posted on its website and in the facility a blanket prohibition of firearms and other deadly

-11-

weapons.  Moreover, Appellant provided a copy of a rental agreement for the Expo

Center between the City Corp and a renter containing the following language:

> [City Corp] represents to tenant that [the Expo Center] is located in a School Zone as defined by the Gun[-]Free School Zone Act of 1990 as contained in 18 U.S.C. [United States Code] adopted November 29, 1990 (the Act).  [City Corp] prohibits the possession of all concealed weapons upon [the Expo Center's] premises pursuant to this Act.  All persons are prohibited from possessing firearms and other deadly weapons on the premises unless such possession is authorized by the exceptions in the Act.  Tenant has the right to allow or disallow open carry of weapons in [the Expo Center] and both unconcealed and concealed weapons on the outside premises of [the Expo Center], at its event to the extent that the event is deemed a private event and because the choice of carrying open carry firearms into the tenant's event is the tenant's choice, it is the tenant's option to comply with state and federal law concerning the possessing of firearms and other dangerous weapons during its event and additionally has a legitimate concern for the safety and security of its artists and employees as well as its event attendees.  For the [sic] reasons, firearms, ammunition, accessories and other deadly weapons shall be prohibited from the premises during the event and [City Corp] shall cause the premises to be posted warning that firearms and other deadly weapons shall not be allowed on the premises.  [City Corp] reserves in its sole discretion, but not the duty, the means necessary to limit firearms upon the premises.  [City Corp] also reserves the right to restrict or prohibit possession of other items such as knives, chains, etc. which may be used as weapons.  As per state statu[t]e, law enforcement officials are exempted from this restriction.

Additionally, an affidavit from the executive director of the Expo Center affirmed that the Expo Center's website posts prohibited items, which include "weapons of any kind," and that the Expo Center entrances had signs posted prohibiting all weapons. The affidavit further stated that the Expo Center had an alcoholic beverage license and during most adult events sold beer, wine, and distilled spirits to be consumed in most of the public portions of the Expo Center.

Appellant argues on appeal that the foregoing actions violated KRS 65.870. Therefore, we must first determine whether Appellees fall within the statutory definition of "local" government under KRS 65.870. The General Assembly defined the Expo Corp as a "municipal corporation and political subdivision of the Commonwealth." In turn, the Expo Corp leased the Expo Center to the City, which clearly qualifies as an "existing . . . city" under KRS 65.870(1). Further, the City subleased the Expo Center to the City Corp, which is an entity "acting under the authority of" the City under KRS 65.870. Indeed, both the mayor and the city manager are listed as officers of the City Corp. Thus, we believe both the City and City Corp are subject to the provisions of KRS 65.870.

Next, we must examine whether the foregoing actions taken by the City and/or the City Corp violated the specific statutory language of KRS 65.870. The record, when viewing the facts in a light most favorable to Appellant, indicates that Appellees took additional steps beyond merely "posting" or "advising" of

existing federal and state laws.  Appellees took affirmative steps to prohibit weapons of any kind at the Expo Center and specifically turned away certain members of Appellant having the proper concealed carry licenses under Kentucky's statutory framework.  While Appellees argue that Appellant has failed to cite to any specific ordinances promulgated by the City prohibiting firearms, Appellees have also failed to cite any support for the proposition that they can regulate the possession of firearms through rule or policy when they cannot do so by law or ordinance.  The language contained in KRS 65.870 is clear, and the City may not regulate indirectly what it cannot regulate directly.  If nothing else, the rules and policies promulgated for the Expo Center are haphazard and confusing, with Appellees' blanket prohibition of guns failing to give clear guidance to those enforcing such ordinances, nor to the citizenry expected to comply with such policies.

Both the circuit court and Appellees rely on the federal Gun-Free School Zone Act for the proposition that, because the Expo Center is within 1,000 feet of various schools and/or education centers, it could post or otherwise advise potential users of the prohibition of deadly weapons under such federal law.  18 U.S.C. § 922(q)(2)(A) states that "[i]t shall be unlawful for any individual knowingly to possess a firearm that has moved in or that otherwise affects interstate or foreign commerce at a place that the individual knows, or has

reasonable cause to believe, is a school zone." The term "school zone" is defined in 18 U.S.C. § 921(a)(25) as "(A) in, or on the grounds of, a public, parochial or private school; or (B) within a distance of 1,000 feet from the grounds of a public, parochial or private school."

Nevertheless, 18 U.S.C. § 922(q)(2)(B)(ii) goes on to state that:

> [s]ubparagraph (A) does not apply to the possession of a firearm . . . (ii) *if the individual possessing the firearm is licensed to do so by the State in which the school zone is located or a political subdivision of the State, and the law of the State or political subdivision requires that, before an individual obtains such a license, the law enforcement authorities of the State or political subdivision verify that the individual is qualified under law to receive the license*[.]

(Emphasis added.) As already discussed, KRS 237.110 discusses licenses to carry concealed deadly weapons and states that:

> [p]rior to the issuance of an original or renewal license to carry a concealed deadly weapon, the Department of Kentucky State Police . . . shall conduct a background check to ascertain whether the applicant is eligible under 18 U.S.C. sec. 922(g) and (n), any other applicable federal law, and state law to purchase, receive, or possess a firearm or ammunition, or both.

Thus, while the Gun-Free School Zone Act applies to the open carrying of firearms within the Expo Center as the Expo Center is within 1,000 feet of a school, the statute specifically exempts those persons with a valid Kentucky concealed carry

license from its scope, and a blanket prohibition of all firearms at the Expo Center was not appropriate.

Appellees further argue that KRS 237.110(16)(f) states that anyone who obtains a concealed carry license is not authorized to carry a concealed firearm into "[a]ny elementary or secondary school facility without the consent of school authorities as provided in KRS 527.070, any child-caring facility as defined in KRS 199.011, any day-care center as defined in KRS 199.894, or any certified family child-care home as defined in KRS 199.8982[.]" However, the Expo Center is not an elementary or secondary school facility, child-care facility, or day-care center. Further, no "1000-foot" rule exists under Kentucky's statute, as it applies only to facilities owned by the school. Thus, a blanket prohibition of firearms is not proper.

Moreover, Appellees argue that KRS 237.110(16)(e) supports their blanket prohibition of firearms at the Expo Center. KRS 237.110(16)(e) states that anyone who obtains a concealed carry license is not authorized to carry a concealed firearm into "[a]ny portion of an establishment licensed to dispense beer or alcoholic beverages for consumption on the premises, which portion of the establishment *is primarily devoted to that purpose*[.]" (Emphasis added.) In this case, while the Expo Center may be licensed to serve alcohol, it is not "primarily devoted to that purpose[.]" Again, the Expo Center's policies and lease provisions

providing for a blanket prohibition of firearms went far beyond a simple notification of the foregoing statutory language.

Consequently, because none of the statutes presented by Appellees authorize a blanket prohibition of firearms at the Expo Center, the statutory framework of KRS 65.870, when viewed in conjunction with KRS 237.115(2), makes clear that, in order for the City to properly regulate or prohibit the carrying of concealed firearms in the Expo Center, the City was required to follow the proper channels in promulgating an ordinance to do so. As previously discussed, KRS 237.115(2) operates to authorize the City to promulgate regulations prohibiting persons licensed to carry concealed deadly weapons from carrying concealed deadly weapons in those portions of buildings that are owned, leased, or occupied by the City while still complying with KRS 65.870. In this case, neither the City nor the City Corp was authorized to disseminate informal policies and provisions contained in leases prohibiting the concealed carrying of firearms, as such methods cannot take the place of a prohibition that is required by statute to be promulgated by a legislative body via statute.

Lastly, while we agree with Appellant that a blanket prohibition of all firearms at the Expo Center was improper, we agree with Appellees that individual renters at the Expo Center have the right to dictate whether their guests are permitted to carry weapons while attending such renter's events and to otherwise

control the renter's security at its events. Although Appellees are subject to KRS 65.870, we conclude that Appellee's enforcement of a private renter's policy does not violate KRS 65.870, as a private renter's policy is not a form of executive or legislative action enacted or enforced by a local unit of government. Therefore, the enforcement clause of KRS 65.870 does not apply to policies created by private renters of the Expo Center's facilities.

To summarize, we believe that a blanket prohibition of all firearms within the Expo Center facilities, whether posted on the Expo Center's website, at the entrances to the Expo Center's facilities, or within a lease agreement drafted by City Corp for potential renters of the Expo Center facilities, is not permitted under KRS 65.870. Specifically, we find that, in order to properly prohibit or limit the concealed carry of firearms in the Expo Center under KRS 237.115, the City's legislative body was required to do so through a properly-promulgated ordinance or administrative regulation. Thus, the circuit court's grant of summary judgment in favor of Appellees as to the blanket prohibition of firearms was in error as to the Expo Center.

Nevertheless, we find that 18 U.S.C. § 922(q)(2)(A) prohibits the open carrying of firearms within the Expo Center, as the Expo Center is within 1,000 feet of a school zone. Additionally, we agree with Appellees that any renter of the Expo Center's facilities has the right to dictate whether their guests are

-18-

permitted to carry weapons while attending such renter's events and to otherwise control the renter's security at its events.

## B. Other Locations

Appellant further argues that various other properties and/or facilities owned, leased, or controlled by the City had rules and policies prohibiting firearms at such facilities. Appellant provided an example of a lease agreement between the City and potential renters of two facilities, the Garfield Community Center and the Pikeville Fire Department Training Facility. In section 11(g) of this agreement, the City required that "[n]o person shall be allowed to have firearms, knives, explosives, or any other weapons in the facility or on the premises at any time." Additionally, Appellants provided a copy of the City's RV Park Rules and Regulations. Rule and Regulation 28 states that "[a]bsolutely no firearms, fireworks, explosives, or weapons of any kind are permitted within any RV, vehicle of any kind, or on the person of any guest." Finally, Appellant provided a copy of the City's Parks and Recreation Department Shelter Rules. Under Rule 9, "[i]t is unlawful for any person, firm, or corporation to take, carry, or otherwise transport any firearm into any City of Pikeville Park unless you are a sworn police officer. Per City Ordinance Chapter 130[.]"

Thus, we again find rules and policies that fall under the same general analysis as previously discussed regarding the Expo Center. KRS 237.115(2)

again operates to authorize the City to prohibit those persons licensed to carry concealed deadly weapons from carrying concealed deadly weapons in those portions of buildings that are owned, leased, or occupied by the City. However, such prohibitions must be in the form of ordinances or administrative regulations promulgated by the City's legislative body and can extend only to "buildings." *See* KRS 237.115. Additionally, the open carry of firearms on any properties located within 1,000 feet of a school zone, as defined in 18 U.S.C. § 922, may be prohibited.

Moreover, we note that, as previously discussed, Kentucky's statutory scheme protects an individual's right to store a firearm in his or her vehicle. *See* KRS 527.020(4) & (8); *Mitchell*, 366 S.W.3d at 898-901. Such right extends to recreational and other vehicles located at any of the facilities described herein. Thus, to summarize, we agree with Appellant that Appellees were not entitled to summary judgment regarding the other properties, as they have not provided evidence that they followed the procedure outlined in KRS 237.115(2) to limit or prohibit the carrying of concealed deadly weapons. Further, Appellees' prohibition of firearms included such firearms that may be lawfully contained within a vehicle under KRS 527.020(4) and/or KRS 527.020(8).

### C. Attorney's Fees

As described by a separate panel of this Court, "an award of attorney fees is within the sound discretion of the trial court, and its decision will not be disturbed absent a finding of abuse of discretion." *Golden Foods, Inc. v. Louisville & Jefferson County Metropolitan Sewer Dist.*, 240 S.W.3d 679, 683 (Ky. App. 2007). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000).

This Commonwealth adheres to the "American Rule" which provides that "attorney's fees are not recoverable in the absence of a statutory or contractual provision to the contrary[.]" *Gibson v. Kentucky Farm Bureau Mut. Ins. Co.*, 328 S.W.3d 195, 204 (Ky. App. 2010). To that end, KRS 65.870(4) states, in relevant part, that: "[a] court shall award the prevailing party in any such suit [under KRS 65.870] . . . [r]easonable attorney's fees and costs in accordance with the laws of this state[.]" In this case, the circuit court awarded attorney's fees to Appellees as the "prevailing party." However, because we are reversing the circuit court's grant of summary judgment in favor of Appellants, we remand the matter to the trial court for reconsideration of the issue of attorney's fees.

## CONCLUSION

Accordingly, we reverse the Pike Circuit Court's summary judgment because we believe that a blanket prohibition of all firearms at the applicable properties was in error. Specifically, we hold that, under 18 U.S.C. § 922(q)(2)(A), the City may post prohibitions of the open carrying of firearms on any of the properties it owns or leases located within 1,000 feet of a school zone. However, we further hold that, for the City to regulate or prohibit the carrying of concealed firearms by licensees on any portion of a building owned, leased, or controlled by the City, its legislative body must follow the proper channels to promulgate an ordinance under KRS 237.115(2). Further, we hold that individual renters of the Expo Center's facilities have the right to dictate whether their guests are permitted to carry weapons while attending such renter's events and otherwise to control the renter's security at its events. Finally, we hold that the City may not prohibit firearms that may be lawfully stored within a vehicle under both or either KRS 527.020(4) and KRS 527.020(8).

On remand, we direct the circuit court to reconsider the issues of attorney's fees under KRS 65.870(4).

ALL CONCUR.

BRIEFS FOR APPELLANT:                BRIEF FOR APPELLEES:

Steven D. Jaeger                     Russell H. Davis, Jr.
Erlanger, Kentucky                   Pikeville, Kentucky


ORAL ARGUMENT FOR                    ORAL ARGUMENT FOR
APPELLANT:                           APPELLEES:

Steven D. Jaeger                     Russell H. Davis, Jr.
Erlanger, Kentucky                   Pikeville, Kentucky